## THE STATE OF IOWA;

IOWA CITY, DECEMBER TERM, A. D. 1856.

In the eleventh year of the State.

PRESENT:

HON. GEORGE G. WRIGHT, CHIEF JUSTICE.
   "   WM. G. WOODWARD,  } JUSTICES.
   "   L. D. STOCKTON,      }

## FOLEY v. McKEEGAN.[1]

Whether the sum specified in a contract, as a penalty for the non-performance thereof, shall be considered as a penalty, or as liquidated damages, is a question of construction, on which the court may be aided by circumstances extraneous to the writing.

The subject matter of the contract—the intention of the parties—as well as other facts and circumstances—may be inquired into, for the purpose of determining the construction to be given to the contract, though the words used are to be taken as proved exclusively by the writing.

In giving a construction to such an instrument, the court must see whether the agreement contains one or several stipulations—whether such stipulations vary in importance—whether the damages are in their nature, certain or un-

| 4 | 1 |
|---|---|
| 89 | 723 |
| 4 | 1 |
| 94 | 683 |
| 4 | 1 |
| 98 | 243 |
| 98 | 381 |
| 4 | 1 |
| 111 | 698 |
| 4 | 1 |
| 117 | 289 |
| 4 | 1 |
| 126 | 728 |
| 4 | 1 |
| 138 | 125 |

[1] This case was decided at the December term, 1855, but was overlooked by some inadvertence, when the decisions of that term were prepared for publication.

Foley v. McKeegan.

certain, or difficult of definite ascertainment—or whether, where the injury is certain, the sum fixed upon, is proportionate or disproportionate to such injury, and the actual claim which grows out of it.

The terms applied by the parties to the sum fixed upon in the contract, will not always define and fix the action of the court in giving a construction to the contract.

Although the parties may call the sum fixed upon in the contract, a "penalty," or give it no name, or style it, "liquidated damages," the court in any or all of such cases, treat the sum as one or the other, depending upon the nature of the agreement, the surrounding circumstances, the intention of the parties, and the reason and justice of the case.

If, by the agreement, it is doubtful whether the parties intended that the sum specified, should be a penalty or liquidated damages, courts incline to treat the contract as creating a penalty to cover the damages actually sustained by the breach, and not as liquidated damages.

Where an action was brought upon a written agreement, which read as follows: "I, J. M., have this day agreed and sold, 200 acres of land, the same more or less, [here follows a reference to the lands,] for which I am to receive $580.00; $50 of which I am now to receive, and the same is to be forfeited by M. F., if he does not pay the balance, on or before the 10th day of April, 1854, and then I will give the deeds of the aforesaid places, at the time the money is paid. I, the said J. M., promise to give the said M. F. next April, together with the lands, [here follows several items of personal property,] and to put 500 rails on the fence of the field. I also bind myself under the penalty of $50, to be paid to the said M. F., if I fail in the fulfillment of the aforesaid agreement; and to the aforesaid agreement, we both sign our hands;" and where the petition claimed damages for the non-performance of the contract; *Held*, That the sum inserted in the contract, to be paid on its non-fulfillment, was designed by the parties as a penalty, and not as liquidated damages.

Where an agreement contains covenants for the performance of several acts or things, and it fixes a specific sum at the end, to be paid upon a breach of performance, the sum so stated, must be regarded as a penalty; and where in a suit on such agreement, the plaintiff elects to proceed upon the covenants, and not to recover the penalty, the plaintiff may recover more or less than the amount of the penalty.

In an action against the vendor of real estate, for failing to convey, the measure of damages should depend upon the cause of the failure to convey.

If the party selling is honest, and was prevented from making the conveyance by unforeseen causes, which he could not control, the plaintiff should recover only nominal damages.

If the plaintiff has paid the price of the land, or any part thereof, and the defendant has failed to convey, from causes beyond his control, the plaintiff should recover the sum paid, with interest.

But if the person selling is in fault, and either did or should have known, that he could not comply with his undertaking; or having the title, refuses to convey, or having the title at the time of the agreement, afterwards disables him-

self from completing it, by a sale to a third person; or at the time of the agreement, knew he had no title; in these, and in all cases where the inability to convey, arises from fraud in the covenantor, the purchaser should recover substantial damages, inclu*d*ing compensation for any actual loss, as by the increased value of the land at the time the contract should have been performed.

Where in an action to recover damages for the non-conveyance of real estate, on an agreement which contained the following provision: "I also bind my-self under the penalty of fifty dollars, to be paid to the said M. F. (the plaintiff) if I fail in the fulfillment of the aforesaid agreement," and which agreement acknowledged the receipt of fifty dollars on the contract, the court instructed the jury, that by the terms of the agreement, the plaintiff was entitled to recover only one hundred and five dollars, being the fifty dollars paid by the plaintiff with interest, and the fifty dollars fixed as the penalty in the agreement; *Held,* That the instruction was erroneous, and that the penalty named in the agreement, was not the measure of the plaintiff's damages.

## *Appeal from the Jackson District Court.*

THIS was originally a bill in chancery, to enforce the specific performance of the following agreement:

" Conditions of agreement between John McKeegan, on the one part, and Michael Foley on the other, May 5th, 1853. I, John McKeegan, have this day, agreed and sold 200 acres of land, the same more or less, (here follows a reference to the land,) for which I am to receive $880; $50 of which I am now to receive, and the same is to be forfeited by Michael Foley, if he does not pay the balance on or before the 10th day of April, 1854; and then I will give the deeds of the aforesaid places, at the time the money is paid. I, the said John McKeegan, promise to give the said Michael Foley, next April, together with the land, (here follows several items of personal property,) and to put 500 rails on the fence of the field. I also bind myself, under the penalty of $50, to be paid to the said Michael Foley, if I fail in the fulfillment of the aforesaid agreement, and to the aforesaid, we both sign our hands.        " JOHN McKEEGAN.
                                " MICHAEL FOLEY."

The petition also claimed compensation, in the event that

it should appear to the court, that plaintiff was not entitled to a specific performance. To this there was a demurrer, which was sustained, and plaintiff amended his petition, so that it now stands as an action at law to recover damages for the breach of said contract. The petition avers that plaintiff on the 10th of April, 1854, tendered the balance due on said agreement, with interest, and demanded a deed for the land, and the delivery of the personal property; that the defendant refused to receive said money, or to perform his agreement; that the land at the time of the tender, was worth $1,300; and that the personal property was worth $100.

The answer does not deny the agreement, the tender, or the value of the land or personal property, but denies that by the agreement, he sold plaintiff the land as claimed. The answer also denies the payment of any part of the price, but admits that defendant received from plaintiff fifty dollars, as a forfeit, if the plaintiff should elect not to abide by said contract. The answer also avers a tender of the said fifty dollars, together with interest, as also the fifty dollars mentioned in the conclusion of the agreement, as the penalty to be paid by defendant, if he failed in the fulfillment of the agreement on his part. This tender is admitted by the replication, and in all other particulars the answer is denied. On the trial, the plaintiff proposed to prove the value of the land and personal property, at the time he tendered the balance of the purchase money, which testimony was objected to, and the objection sustained. The plaintiff also claimed, that the defendant was estopped, from the state of the pleadings, from denying the value of the land and personal property, but the court held otherwise. It also appears that the court charged the jury, that by the terms of the agreement, the plaintiff was entitled to recover only one hundred and five dollars, being the fifty dollars with interest, paid by plaintiff, and the fifty dollars fixed as the penalty in the bond or agreement, to all which plaintiff excepted. It further appears, that an attachment was issued, but was, on motion of defendant, dissolved. Verdict for plaintiff for one hundred and five dollars. Judgment thereon, and he now appeals.

*Smith, McKinlay & Poor,* for the appellant.

*Ben M. Samuels,* for the appellee.

WRIGHT, C. J.—Several errors are assigned, but they may all appropriately be considered under two heads:

*First.* Did the court err in sustaining the demurrer to the original petition?

*Second.* Was the construction given to the written agreement, as to the measure of plaintiff's damages, or the amount he had a right to recover, correct?

As to the first, we think plaintiff cannot now complain. Instead of standing by his original bill, he appears to have voluntarily abandoned it, submitted to the decision of the court on the demurrer, made his amendment, and went to trial on his claim for damages. By so doing, he has changed the whole form of his action, and it is now too late for him to claim a specific performance of the agreement. The defendant also claims that plaintiff had no right to so amend his petition, and that in permitting the same, the court erred. To this, a sufficient answer is, that defendant at the time made no objection, but took issue upon such amended petition, and went to trial upon the merits. It is now too late for him to object.

The second question is one of more difficulty. There can be no doubt, from the state of the pleadings, that plaintiff was estopped from denying the value of the property at the time of the tender. And this, because the value is distinctly averred in the petition, not denied in the answer, and is, therefore, admitted under our practice. But this can make no difference, if the construction given to the within agreement by the court below, is correct.

For if plaintiff can only recover the money paid, and the penalty named in the bond, then the value of the land and personal property, whether established by the pleadings or by the testimony of witnesses, becomes entirely immaterial. So that the sole question arises on the instruction given to the jury, as to the amount of plaintiff's recovery.

There is much uncertainty in the application of the cases on this subject; and not by any means, an entire uniformity in the principles which have influenced the mass of decisions thereon. From all, however, we may deduce one point as settled. Whether the sum mentioned shall be considered as a penalty, or as liquidated damages, is a question of construction, on which the court may be aided by circumstances extraneous to the writing. The subject matter of the contract, the intention of the parties, as well as other facts and circumstances, may be inquired into, although the words are to be taken as proved exclusively by the writing. *Perkins* v. *Lyman*, 11 Mass. 76; 2 Parsons on Contracts, 439; *Saintes.* v. *Ferguson*, 7 C. B. 716; *Brewster* v. *Edgerly*, 13 N. H. 275. In giving a construction also, we must see whether the agreement contains one or several stipulations; whether such stipulations vary in importance; whether the damages are in their nature certain or uncertain, or difficult of definite ascertainment; or whether, where the injury is certain, the sum fixed upon is proportionable or disproportionate to such injury, and the actual claim which grows out of it. 2 Parsons on Cont. 435; *Dennis* v. *Cummings*, 3 Johns. Cases, 297; *Astley* v. *Weldon*, 2 B. & P. 346; Phil. Ev. Vol. I, 167, (7th ed.); *Kemble* v. *Farrel*, 6 Bingh. 148; *Price* v. *Green*, 16 M. & W. 346; *Heard* v. *Bowers*, 23 Pick. 445. The terms applied by the parties to the sum fixed upon, will not always define and determine the action of the court in giving such construction. That is to say, though the parties may call the sum so fixed, a " penalty," or give it no name, or style it " liquidated damages," the court, in any and all such cases, treat the sum as one or the other, depending upon the nature of the agreement, the surrounding circumstances, the intention of the parties, and the reason and justice of the case. 2 Parsons on Cont. 438; *Harbrank* v. *Lappen*, 15 Johns. 200; *Chamberlain* v. *Bagley*, 11 N. H. 234; *Williams* v. *Daken*, 17 Wend. 447; *Carpenter* v. *Lockhart*, 1 Carter (Jud.) 434; *Beale* v. *Hayes*, 5 Sandford, 640; *Lindsey* v. *Anesley*, 6 Iredell, 186.

Another rule, fairly deducible from the authorities, is, that if by the agreement, it is doubtful whether the parties

intended that the sum specified should be a penalty or liqui-
dated damages, courts incline to treat the contract as crea-
ting a penalty to cover the damages actually sustained by
the breach, and not as liquidated damages.    *Taylor* v. *Sandi-
ford*, 7 Wheat. 13 ; *Schute* v. *Taylor*, 5 Metc. 61 ; *Bagley* v.
*Peddie*, 5 Sandf. 192 ; *Baird* v. *Tolliver*, 6 Humph. 186.    And
in the case of *Taylor* v. *Sandiford*, it is held, that the infer-
ence is much stronger in favor of its being a penalty, when
it is expressly so reserved, and that it would require in such
a case, strong evidence to authorize the court to say, that the
parties have not, by their own words, expressed their own
intention.    See also *Hamilton* v. *Overton et al.*, 6 Blackford,
206.

A brief reference to one or two adjudicated cases, and we
will then proceed to construe the instrument before us.

In *Davies* v. *Penton*, 6 Barn. & Cress. 216, A. agreed to
sell to B. the stock and good will of his business, and to de-
mise to him his house in which the business was carried on,
for which B. was to pay £800, and to take the furniture and
fixtures, at a valuation, which were afterwards valued at £174.
At the time of executing the agreement, £400 was paid to
A., and B. agreed to accept and pay two bills of exchange,
one for £400, payable twelve months from date, and the
other for £174, payable two months from date.    And A.
agreed not to carry on the business within five miles of the
house ; and for the true performance of this agreement, each
of them did thereby bind and obligate himself to the other,
in the penal sum of £500, to be recovered for a breach of the
said agreement in a court of law, as and by way of liquidated
damages.    Held, by ABBOTT, C. J., and BAYLEY, HOLROYD
and LITTLEDALE, Justices, that the sum was a penalty, and not
liquidated damages.    In *Lowe* v. *Peers*, 4 Barrows, 2227, the
distinction between liquidated damages and a penalty to se-
cure the performance of a contract, is expressed by Lord
MANSFIELD.    Says his lordship, there is a difference between
covenants in general, and covenants secured by a penalty or
forfeiture.    In the latter case, the obligee has his election to
bring an action for the penalty, after which he cannot resort

to the covenant, or to proceed upon the covenant and recover *more or less than the penalty.* See also *Harrison* v. *Wright,* 13 East, 343.

In *Martin* v. *Taylor,* 1 Wash. C. C. R. 1, the action was covenant upon an agreement under seal. By the agreement, the parties, for the true and faithful performance of all the covenants therein contained, bound themselves, each to the other, in the penalty of £120, Virginia currency. It was objected that the £120 was in lieu of liquidated damages, and that as the plaintiff could recover no greater sum than that, the court had no jurisdiction of the case, that court having no jurisdiction where the demand was for less than five hundred dollars. The objection was overruled, however, and held that the action being in covenant, and not for the penalty, the plaintiff might recover more or less than the penalty.

In *Carpenter et al.* v. *Lockhart,* 1 Carter, (Ind.) 434, the action was covenant on an agreement, containing a number of stipulations, damages for the breach of some of which would be certain, and of others uncertain, and contained a mutual covenant that if either should fail, " in any particular, to abide by, observe and perform the above written agreement, or any article, clause, covenant, or promise, therein contained, by and on his or their part, to be observed, kept, &c. ; the party so failing, shall pay the other party $10,000, (and no greater or smaller sums,) as and for the damages occasioned by such failure." This sum was regarded as a penalty, and not as liquidated damages.

In view of the above general doctrines, and such as are deducible from the cases cited, we are of the opinion that the sum inserted in this contract, to be paid on its non-fulfillment, was designed by the parties as a penalty, and not as liquidated damages. In the first place, the parties have so expressly denominated it. And while the construction is not to be conclusively determined by their having so styled it, yet in the language of Ch. J. MARSHALL, in 7 Wheat. 13, " the inference is much stronger in favor of its being a penalty where it is expressly reserved as one." In the next

place, this agreement contains more than one stipulation, or the defendant binds himself to do more than one act. And these stipulations differ materially in their importance. He binds himself to make a deed to two parcels of land, (or "places," as they are called in the agreement.) He also undertakes to put on the fence of the field, five hundred rails, and to deliver to plaintiff various articles of personal property. ·Suppose he performed his agreement as to the land, and delivered all the personal property, except the five bushels of potatoes, or the two pigs therein named, it would be manifestly unjust and oppressive to require him to pay the fifty dollars named.

And on the other hand, suppose he had performed the unimportant parts of the agreement, and failed to convey the land, is the measure of the plaintiff's damages the same ? The answer must readily be, that in the one instance it would be too high, and in the other it might be too low. But again, if he fails entirely to perform either of his covenants or stipulations, the reason is still stronger why the damages should be different, than if he failed in an unimportant, or any one important particular. On this subject, see *Astley* v. *Weldon*, 2 Boss. & Pull. 346. It is there stated, that where articles contain covenants for the performance of several things, and where one large sum is stated at the end to be paid, upon the breach of performance, that must be considered as a penalty. So in *Davies* v. *Penton*, above cited, says BAYLEY, J., where the sum which is to be the security for the performance of an agreement to do several acts, will in case of breaches of the agreement, be in some instances too large, and in others too small for the injury thereby occasioned, that sum is to be considered a penalty. See also *Jackson* v. *Baker*, 2 Edw. Ch. 471. And again, the damages to arise from a breach of some of the stipulations of this contract, if not all, are not uncertain, but may be ascertained by evidence. The consideration for the defendant's undertaking is disclosed, and the motives that influenced the contract. And in this and other particulars, this case differs from that of *Hamilton* v. *Overton et al.*, 6 Blackford, 206. In that case, there was but one cove-

nant, and from its nature the damages for a violation of it, were entirely uncertain, and could not be ascertained by evidence. It also appeared that the parties had expressly stipulated that the sum named should be "liquidated damages," and it was so regarded. As to the rule on this subject, see 2 Parsons on Contracts, 435; *Kemble* v. *Farrer*, 6 Bingh. 148; *Beale* v. *Hayes*, 5 Sandf. 640. We conclude, therefore, that the sum named in this agreement, is not the measure of the plaintiff's damages, but must be treated as a penalty.

The plaintiff has elected to proceed upon the covenants, and not to recover the penalty, and such recovery under the authorities cited above, may be more or less than the penalty. And further on this subject, see *Brown* v. *Bellows*, 4 Pickg. 178; 2 Greenl. Ev. § 257. And this brings us to consider the rule of damages in such cases. It will be observed that this case is distinguishable from that class of cases that discuss the measure of damages in covenants of warranty, and in covenants of seizin. In such cases, the authorities are uniform as to the true measure in covenants of seizin, but not where the action is upon the covenants of warranty. In the latter case, in Massachusetts, Connecticut, Maine, Vermont, and South Carolina, and perhaps some other states, the measure is the value of the land at the time of eviction. In New York, Kentucky, Pennsylvania, New Jersey, Ohio, Georgia, North Carolina, Tennessee, and Virginia, the measure is the purchase money, with interest. In the former case, we believe it to be uniformly held, that the measure of damages is the purchase money and interest. *Marston* v. *Hobbs*, 2 Mass. 433; *Bickford* v. *Paige*, Ib. 485; *Gore* v. *Bragier*, 3 Mass. 543; *Cushman* v. *Blanchard*, 2 Greenl. 266; *Sterling* v. *Peet*, 14 Conn. 245; *Park* v. *Bates*, 12 Vermont, 387; *Werting* v. *Niseley*, 13 Penn. 650; *Clark* v. *Parr*, 14 Ohio, 118; *Bennett* v. *Jenkins*, 13 Johns. 50; *Holmes* v. *Simickson*, 3 Green, (N. J.) 313; *Pence* v. *Duvall*, 9 B. Mon. 48; *Shaw* v. *Wilkins*, 8 Humph. 647. When the action is brought as in this case, on a contract to sell, against the vendor, who has failed to convey, we find much difficulty in determining the measure of damages upon authority. As damages are given as

Foley v. McKeegan.

a compensation or satisfaction to the plaintiff for an injury received from the defendant, reason and exact justice would seem to dictate, that he should not in all such cases be confined to the consideration money and interest, for frequently the interest upon the money paid, is but the smallest fraction of the amount of injury actually sustained. On the other hand, quite as much injustice may result by holding that in all cases, the plaintiff is entitled to the appreciated value of the land, at the time the conveyance should have been made. May a rule be recognized, then, which shall have for its basis the giving of compensation for the injury, and at the same time avoid injury to a vendor, who acts in good faith ? We believe there is such a rule sustained by authority and reason, and which while it may not in all cases, make the plaintiff whole or give him full satisfaction, will approximate it, and be as just and equitable as is consistent with most general rules. We believe that the measure of damages should depend upon the cause of the failure. If the person selling is honest, and prevented from making the conveyance by unforeseen causes, and which he could not control, the plaintiff should recover only nominal damages. If he has paid the price, or any part thereof, then, of course, in such a case, he should recover that sum with interest.

But if the person selling is in fault, and either did or should have known that he could not comply with his undertaking; or having the title, refuses to convey; or having title at the time of the agreement, afterwards disables himself from completing it, by a sale to a third person; or at the time of the agreement knew he had no title, in these and in all cases where the inability arises from fraud in the covenantor, the purchaser should recover substantial damages, "including compensation for any actual loss, as by the increased value of the land at the time the contract should have been executed." And without referring to the authorities in detail, to sustain this view, we cite the following : *Hopkins* v. *Lee*, 6 Wheat. 109 ; *Nichols* v. *Freeman*, 11 Iredell, 99 ; *Bryant* v. *Hambruch*, 9 Geo. 133; *Whitensides* v. *Jennings*, 19 Ala. 784 ; *Hill* v. *Hobart*, 16 Maine, 164; *Warren* v. *Wheeler*, 21

Maine, 484; *Buckmaster* v. *Grundy*, 1 Scam. 310; *McKee* v. *Brander*, 2 Scam. 339; *Carmell* v. *McLean*, 6 Har. & J. 297; *Hopkins* v. *Gaybrook*, 13 Eng. Com. Law, 100; *Driggs* v. *Dwight*, 17 Wend. 71; *Peters* v. *McKeon*, 4 Denio, 546. And also see *Fletcher* v. *Button*, 6 Barb. 646. In this last case, the question did not arise, but it is fairly intimated, that plaintiff would not, in all actions brought on a covenant to convey, be confined to the purchase money paid and interest. And we may also remark, that many of the above cases hold that the measure of damages will not be influenced by the question of fraud in the covenantor, but the same rule applies to bargains respecting lands, as in those in actions for the non-delivery of chattels. Others again do admit the distinction. It is recognized by Mr. Parsons in his late work on Contracts, (Vol. II, 505.) And we believe it to be eminently just and proper.

That there are authorities holding a contrary view, we are well aware. But on the contrary, where land is so much an article of trade in the market—where its value so rapidly appreciates—where our citizens are constantly investing their means therein, for purposes of legitimate profit and speculation—we see no reason why they should not have the expected benefit of their investments, where the covenantor, by his own wrongful act, deprives the purchaser of the land. The obligor binds himself to convey the land. Equity from the time of the agreement, regards the land as belonging to the purchaser, and the money as belonging to the vendor. And in case of dishonesty, every principle of right would dictate that the purchaser should have the benefit of his bargain.

If the vendor so elects, he may specifically execute his agreement, and thus avoid damages. In such cases, the vendor gets what he contracted for. And ordinarily this is what he should have. So, on the other hand, it is true that the vendor may file his bill for a specific performance. But he is not always compelled to do so, and in some cases his suit would be fruitless, the vendor having parted with the title to an innocent holder. The case of *Stewart* v. *Noble*, 1 G.

Greene, 26, does not conflict with the foregoing conclusion. The covenantor in that case died in a short time after making the agreement, and in such case the purchase money, with interest, we think, would be the proper measure of damages. It is urged in the argument by appellant, that the court erred in dissolving the attachment. The assignment of errors does not point to this objection, however, and it cannot therefore be considered. The court below having erred in the construction given to the contract declared upon, and in the charge to the jury, as to the measure of damages, the judgment must be reversed.

Judgment reversed.